CHARLES EIBEN *et al.*, Plaintiffs-Appellants, v. E.J. CATTANI AND SONS, INC., *et al.*, Defendants-Appellees (David Sullivan, Bureau County Superintendent of Highways, Defendant).

Third District   Nos. 3—90—0686, 3—91—0094 cons.

Opinion filed August 23, 1991.

Peter F. Ferracuti, of Law Offices of Peter F. Ferracuti, P.C., of Ottawa (Mark A. Schindler, of counsel), for appellants.

T. Donald Henson, of Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of La Salle, and Karen C. Eiten, of Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of Ottawa, for appellee Bureau County.

Quinn, Johnston, Henderson & Pretorius, Chartered, of Peoria (Bradley W. Dunham, of counsel), for appellee E.J. Cattani & Sons, Inc.

JUSTICE GORMAN delivered the opinion of the court:

Plaintiffs appeal from two separate orders entered by the circuit court in regard to their personal injury action. In appeal 3—90—0686, plaintiffs Charles and Karen Eiben appeal from dismissal of the second count of their second amended complaint. That count was directed against defendant Bureau County and was dismissed on the basis that the county was immune from the liability alleged in that count. In appeal 3—91—0094, plaintiffs appeal from summary judgment entered in favor of defendant E.J. Cattani & Sons, Inc. (Cattani), on all counts of the third amended complaint which were directed against Cattani. We affirm both orders entered by the circuit court.

The facts of the incident that gave rise to the instant lawsuit are as follows. On November 12, 1987, Charles Eiben, a carpenter employed by Garland Construction Company (Garland), was working on a bridge construction project in Bureau County. Part of the bridge construction project involved pile driving. Garland owned the pile driver hammer and supporting tower that were being used. The pile driver and tower were attached to and were supported by a crane. Garland had leased the crane and two crane operators from Cattani.

Plaintiff climbed the tower and started the pile driver hammer. The hammer descended and began striking the sheet piling. The sheet piling then suddenly shifted on one side as a result of striking an un-

derground object, later determined to be a tree root. Once the sheet piling and tower shifted, the hammer slid off, falling to the ground. When the hammer hit the ground, it shook the tower and Charles fell off the tower to the ground.

Charles and his wife, Karen, brought suit against Cattani, Bureau County and the Bureau County Highway Department. In count II of the second amended complaint, plaintiffs alleged that certain defendants, including Bureau County, were in charge of and responsible for the erection of the bridge. The fourth paragraph of this count stated as follows:

> "4. Defendants BUREAU COUNTY, BUREAU COUNTY SUPERINTENDENT OF HIGHWAYS, DAVID SULLIVAN and their agents and employees solicited and approved plans, methods, techniques, and procedures which conformed to their specifications, made on site inspections of work in progress, *and otherwise maintained supervision and control* of the work in progress then being executed by the general contractor, Garland Construction Company." (Emphasis added.)

Next were pleaded certain provisions of the Structural Work Act (Ill. Rev. Stat. 1989, ch. 48, par. 60 *et seq.*) requiring that cranes and other mechanical contrivances used in the erection of bridges be themselves erected or constructed as to give adequate protection for persons employed or engaged thereon.

The manner in which Bureau County was allegedly at fault was stated in the seventh paragraph of this count:

> "7. The Defendant, Bureau County, by its agents and employees, *was in charge of* the pile driving operation and was aware that the Plaintiff would be required to climb the pile driver leads from time to time to perform various tasks including those herein above alleged and, despite such knowledge and with conscience [*sic*] indifference to the surrounding circumstances *willfully and wantonly failed to assure* that the pile driving hammer and leads were erected, constructed, placed and operated in a safe, suitable and proper manner as contemplated by the provisions of the Structural Work Act in the following respects:
>
> > (a) Failed to properly and adequately anchor the bottom of the leads into the ground before permitting the hammer to be started;
> >
> > (b) Failed to inspect the ground underneath the leads and the piling for the presence of foreign objects which might obstruct the piling when the driving operation started;

(c) Failed to require persons working on or about the leads of the pile driver to wear a safety belt while aloft;

(d) Failed to maintain sufficient cable tension upon the pile driver so as to prevent it from tilting when the piling twisted;

(e) Operated the pile driver when it was not adequately equipped for the driving of sheet piling."

Plaintiffs alleged that this conduct violated the Structural Work Act and that as a direct and proximate result of this "willful and wanton conduct" plaintiffs suffered specified types of damages.

As to defendant Cattani, plaintiffs alleged, *inter alia*, that Cattani, through its agents and employees, committed certain specified acts or omissions alleged to have been negligent, including the failure "to maintain sufficient cable tension upon the pile driver so as to prevent it from tilting when the piling twisted." It was further alleged that as a direct and proximate result of these alleged acts and omissions plaintiffs suffered specified types of damages.

■■ The trial court dismissed the count against Bureau County on the basis of section 3—108(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 *et seq.*). That section states:

"Except as otherwise provided by this Act and subject to subdivision (b) neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property." Ill. Rev. Stat. 1989, ch. 85, par. 3—108(a).

Plaintiffs raise the issue of whether the trial court erred in finding that this section provided immunity to Bureau County so as to bar plaintiffs' causes of action against the county under the Structural Work Act.

■■ In order to make allegations sufficient to bring the defendant Bureau County under the Structural Work Act, the plaintiffs allege Bureau County maintained supervision and control of the work. Despite that allegation, plaintiffs now maintain that "having charge of" a construction project for the purposes of the Structural Work Act does not include supervision of the activities at the jobsite. Clearly, one of the elements used to define whether a party has charge of a project for purposes of the Structural Work Act is whether that party maintained supervision or control over the work performed at the jobsite.

Plaintiffs cannot have it both ways. If the county is alleged to have "had charge of" the project by virtue of having maintained su-

pervision or control over the project, section 3—108 of the Tort Immunity Act applies. The trial court properly granted defendant Bureau County's motion to dismiss.

■■ We also affirm the trial court's decision on the summary judgment for Cattani. In *Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 116, 514 N.E.2d 188, 192, our supreme court stated:

> "Necessary to any recovery based on negligence is the existence of a duty to conform to a certain standard of conduct for the protection of the plaintiff. [Citation.] Since the defendant had simply furnished the equipment and operators, however, he had no duty to take any of the actions suggested in the complaint to protect the plaintiff. The complaint does not allege May's vicarious liability for negligent omissions by the operators, *but even if it did* the defendant would be entitled to summary judgment on this record because there is no evidence suggesting that the operators had independent authority to take any action." (Emphasis added.)

Thus, although *Puttman* did not involve vicarious liability, the court's holding controls this case as well. Affidavits made clear that the operator of the crane was subject to the complete control of Eiben's employer, Garland. Accordingly, we find the case indistinguishable from *Puttman* and hold that Cattani owed no duty to the plaintiffs.

For the reasons listed above, the decisions of the circuit court of Bureau County are affirmed.

No. 3—90—0686, Affirmed.
No. 3—91—0094, Affirmed.

McCUSKEY and SLATER, JJ., concur.