687 N.E.2d 1042 (1997)
178 Ill.2d 370
227 Ill.Dec. 560
Le Roy James EPSTEIN, Appellee,
v.
The CHICAGO BOARD OF EDUCATION, Appellant.
No. 80965.
Supreme Court of Illinois.
October 17, 1997.
Rehearing Denied December 1, 1997.
*1044 Nancy J. Arnold, Kralovec, Marquard, Doyle & Gibbons, Chicago, for Chicago Board of Education.
Michael W. Rathsack, Chicago, for Le Roy James Epstein.
Michael Resis, Querrey & Harrow, Ltd., Chicago, for Charles H. Bruckner & Sons.
Steven J. Kleinman, Park District Risk Management Agency, Wheaton, for Amicus Curiae Illinois Association of School.
Justice BILANDIC delivered the opinion of the court:
The Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill.Rev.Stat.1987, ch. 85, par. 1-101 et seq.) provides in section 3-108(a) that "neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property." Ill.Rev.Stat.1987, ch. 85, par. 3-108(a). This appeal addresses the interplay between section 3-108(a) immunity and claims brought against local public entities based upon violations of the Structural Work Act (Ill.Rev.Stat.1987, ch. 48, par. 60 et seq.).

BACKGROUND
The plaintiff, Le Roy James Epstein, brought this cause of action against the Chicago Board of Education (Board) and a contractor in the circuit court of Cook County, seeking to recover damages pursuant to the Structural Work Act. The contractor subsequently filed a third-party complaint against another contractor and the project architect.
The plaintiff's third-amended complaint against the Board contained only a Structural Work Act claim. The complaint alleged that the Board engaged a number of contractors to perform renovation work at a Chicago public school. The plaintiff was employed by a subcontractor to work on the project as a pipefitter. On June 23, 1987, the plaintiff was standing on a ladder while using a hand-held power tool to grind a groove into the wall. He fell from the ladder and was injured.
The complaint charged that the Board was in charge of the plaintiff's construction work at the school. The complaint further charged that the Board had violated the Structural Work Act by allowing the plaintiff to use a ladder rather than a scaffold, and by failing to perform the following acts: stop the plaintiff's grinding work; inform the plaintiff's employer that a scaffold should be used; enforce OSHA safety measures pertaining to workers at elevated levels; require the grinding work to be performed from a scaffold; and furnish the plaintiff with a scaffold or other suitable support.
The Board moved to dismiss the Structural Work Act complaint against it pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1992)). The Board argued that the allegations in the plaintiff's complaint amounted to charges that the Board had failed to supervise the construction work on its premises, actions for which the Board is immune from liability under section 3-108(a) of the Tort Immunity Act. In support of this proposition, the Board relied on the appellate court decision of Eiben v. E.J. Cattani & Sons, Inc., 217 Ill.App.3d 609, 160 Ill.Dec. 557, 577 N.E.2d 882 (3d Dist. 1991).
The plaintiff responded with the countervailing appellate court opinion in Eck v. McHenry County Public Building Comm'n, 237 Ill.App.3d 755, 178 Ill.Dec. 586, 604 N.E.2d 1109 (2d Dist.1992). The Eck court held that section 3-108(a) of the Tort Immunity Act never applies to bar a Structural Work Act claim. Eck, 237 Ill.App.3d at 757-63, 178 Ill.Dec. 586, 604 N.E.2d 1109. In the alternative, the plaintiff contended that section 3-108(a) is not applicable to his case because the Board's actions amounted to more than a failure to supervise.
The circuit court granted the Board's motion and dismissed the plaintiff's complaint. Following Eiben, the circuit court held that *1045 the plain language of section 3-108(a) provides the Board with immunity for its failure to supervise the construction activities. The circuit court then issued a Supreme Court Rule 304(a) finding (155 Ill.2d R. 304(a)), following which the plaintiff appealed the circuit court's order granting the Board's motion to dismiss.
The appellate court reversed the circuit court's dismissal and remanded for further proceedings. Nos. 1-93-1174, 1-93-2071 cons. (unpublished order under Supreme Court Rule 23). Following Eck's progeny (Serrano v. Chicago Board of Education, 257 Ill.App.3d 888, 196 Ill.Dec. 86, 629 N.E.2d 631 (1st Dist.1994)), the appellate court held that section 3-108(a) never provides immunity to local governmental entities for claims asserted under the Structural Work Act. In addition, the appellate court found the dismissal of the plaintiff's complaint to be improper for an alternative reason. The appellate court held that the plaintiff's pleadings and evidence raised a question of material fact as to whether the Board's conduct amounted to more than mere supervision of the construction at the school.
We allowed the Board's petition for leave to appeal (155 Ill.2d R. 315(a)) to resolve the conflict in the appellate court on whether section 3-108(a) of the Tort Immunity Act ever provides immunity from Structural Work Act claims.

ANALYSIS

I
The Board contends that the appellate court erred in holding that section 3-108(a) of the Tort Immunity Act never provides local governmental units with immunity from Structural Work Act claims.
The history of sovereign immunity in Illinois has been discussed frequently in this court's opinions (see, e.g., Burdinie v. Village of Glendale Heights, 139 Ill.2d 501, 506-07, 510-11, 152 Ill.Dec. 121, 565 N.E.2d 654 (1990), overruled in part on other grounds, McCuen v. Peoria Park District, 163 Ill.2d 125, 129-30, 205 Ill.Dec. 487, 643 N.E.2d 778 (1994); Henderson v. Foster, 59 Ill.2d 343, 349-50, 319 N.E.2d 789 (1974)), and we need not reiterate it here. Suffice it to say that the Illinois Constitution of 1970 abolished sovereign immunity in Illinois, except as may be provided by our General Assembly through statutory law. Ill. Const.1970, art. XIII, § 4. The legislature exercised this prerogative, with regard to local governmental units, through its retention of the Tort Immunity Act. As a result, the Tort Immunity Act governs whether and in what situations local governmental units such as the Board are immune from civil liability.
We are here called upon to interpret section 3-108(a) of the Tort Immunity Act. The principles to be applied in construing provisions of the Act are well established:
"[O]ur primary goal is to ascertain and give effect to the intention of the legislature. We seek the legislative intent primarily from the language used in the Tort Immunity Act. We evaluate the Act as a whole; we construe each provision in connection with every other section. [Citation.] If we can ascertain the legislative intent from the plain language of the Act itself, that intent must prevail, and we will give it effect without resorting to other interpretive aids. [Citation.] We must not depart from the plain language of the Act by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent." Barnett v. Zion Park District, 171 Ill.2d 378, 388-89, 216 Ill.Dec. 550, 665 N.E.2d 808 (1996).
Section 3-108(a) states, in relevant part:
"Except as otherwise provided by this Act * * * neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property." Ill.Rev.Stat.1987, ch. 85, par. 3-108(a).
The Board maintains that, under the plain meaning of this provision, local governmental units are immune from liability for any injury caused by a failure to supervise an activity on public property, which includes immunity for the failure to supervise construction activities that form the basis of a Structural Work Act claim. The plaintiff, on the other hand, asserts that the legislature did not intend section 3-108(a) to include within its scope immunity *1046 from Structural Work Act claims. The plaintiff further insists that the legislature did not intend section 3-108(a) immunity to apply to construction-type activities, but rather intended to limit its application to only recreational and scholastic activities. We reject the plaintiff's arguments.
Section 3-108(a) by its plain terms immunizes a local governmental unit's failure to supervise "an activity" on public property. This language clearly applies to the failure to supervise any "activity" on public property, as it does not limit, in any manner, the types of activities which are included. The plaintiff asks us to read exceptions into this provision for both Structural Work Act claims and construction activities. The plaintiff also asks us to limit section 3-108(a)'s provisions to only recreational and scholastic activities. This court has in the past, however, specifically admonished against reading exceptions into or engrafting tacit limitations onto the Tort Immunity Act's language that conflict with the express legislative intent. Barnett, 171 Ill.2d at 388-89, 216 Ill.Dec. 550, 665 N.E.2d 808. To accept the plaintiff's argument would require us to do just that. We therefore conclude that section 3-108(a) allows for no such exceptions or limitations.
A further evaluation of section 3-108(a), along with the Tort Immunity Act as a whole, also supports our rejection of the plaintiff's argument. Section 3-108(a) grants immunity "[e]xcept as otherwise provided by this Act." Ill.Rev.Stat.1987, ch. 85, par. 3-108(a). Accordingly, section 3-108(a) by its own terms provides that the only exceptions to its grant of immunity are those set forth elsewhere in the Tort Immunity Act. Our review of the entire Tort Immunity Act reveals that it provides exceptions for liability under the Workers' Compensation Act and the Workers' Occupational Diseases Act (Ill.Rev.Stat. 1987, ch. 85, pars.2-101(c), (d)), among other things. The Tort Immunity Act, however, nowhere makes an exception for liability under the Structural Work Act or for construction activities. Nor does the Tort Immunity Act contain any provision limiting section 3-108(a)'s application to only recreational or scholastic activities. Consequently, none of the asserted exceptions or limitations exist.
The plaintiff nevertheless urges us to follow the reasoning employed by the appellate court in Eck v. McHenry County Public Building Comm'n, 237 Ill.App.3d 755, 178 Ill.Dec. 586, 604 N.E.2d 1109 (1992). There, the appellate court held that section 3-108(a) of the Tort Immunity Act never applies to bar a Structural Work Act claim. Eck, 237 Ill.App.3d at 757-63, 178 Ill.Dec. 586, 604 N.E.2d 1109. The appellate court in Eck provided a four-pronged rationale for its decision. We review and reject that rationale below.
The Eck court first noted the lack of case law addressing the interplay between section 3-108(a) and claims brought under the Structural Work Act. Despite this lack of authority, the court found that a "substantial body of case law exists * * * which implicitly recognizes that local public entities can be held liable for claims brought under the Structural Work Act arising out of construction-related injuries." Eck, 237 Ill.App.3d at 760-61, 178 Ill.Dec. 586, 604 N.E.2d 1109 (citing five cases). We do not agree with this statement. In reality, this statement and its accompanying citations amount to a list of Structural Work Act cases against local governmental units in which the affirmative defense of section 3-108(a) immunity was never raised, decided or discussed. Under these circumstances, no precedential weight can be given to these cases.
Secondly, the Eck court opined that, although section 3-108(a)'s plain language arguably grants immunity for the failure to supervise construction activities, the legislature had not intended for it to immunize local governmental entities from Structural Work Act liability for construction-related injuries. The court continued: "If we were to adopt such a broad reading of section 3-108(a), the term `activity' would engender activities clearly beyond what have been typically and historically regarded as governmental functions. In short, the exception (i.e., immunity) would swallow the rule." Eck, 237 Ill. App.3d at 761, 178 Ill.Dec. 586, 604 N.E.2d 1109.
The Eck court erred when it departed from section 3-108(a)'s plain language. As stated above, the best method for ascertaining *1047 legislative intent is to analyze the plain language of the statute itself. Where the legislative intent can be ascertained in this manner, that intent must prevail and be given effect without resorting to other interpretive aids. Barnett, 171 Ill.2d at 388-89, 216 Ill.Dec. 550, 665 N.E.2d 808. We note, moreover, that the explanations offered by the Eck court for its departure from section 3-108(a)'s plain language are not persuasive. The Eck court expressed its concerns that, were it to interpret the term "activity" to include construction activities, then (1) activities beyond those traditionally regarded as governmental functions would be immunized, and (2) the exception of immunity would swallow the rule of liability. The first concern must be rejected outright. The old common law governmental/proprietary function distinction is not contained in the Tort Immunity Act and, as a result, it no longer governs a local governmental unit's immunity. In re Chicago Flood Litigation, 176 Ill.2d 179, 191, 223 Ill.Dec. 532, 680 N.E.2d 265 (1997); Barnett, 171 Ill.2d at 387-88, 216 Ill.Dec. 550, 665 N.E.2d 808. As to the second concern, we fail to see how the immunity granted in section 3-108(a) could swallow the Tort Immunity Act's general rule of liability. After all, section 3-108(a) does not broadly immunize all "activity"; rather, it immunizes the "failure to supervise an activity on or the use of any public property." (Emphasis added.) Ill.Rev.Stat.1987, ch. 85, par. 3-108(a). Section 3-108(a) thus constitutes a carefully crafted and limited exception to liability, which bars plaintiffs' claims against local governmental units for their failure to supervise the activities of others. This expressed legislative intent must prevail.
The Eck court also invoked the rule of statutory construction that the Tort Immunity Act must be strictly construed against the local governmental entity because it is in derogation of the common law. Eck, 237 Ill.App.3d at 761, 178 Ill.Dec. 586, 604 N.E.2d 1109. The Eck court found that application of this rule required the conclusion that section 3-108(a) does not provide immunity in these circumstances. See Eck, 237 Ill.App.3d at 761, 178 Ill.Dec. 586, 604 N.E.2d 1109. The Board devotes a substantial portion of its brief to the argument that this rule cannot be justified historically and should be reexamined and discarded. We need not reexamine this long-standing rule here. See Reynolds v. City of Tuscola, 48 Ill.2d 339, 342, 270 N.E.2d 415 (1971). We find that section 3-108(a)'s meaning is plain and that the foregoing rule of statutory construction does nothing to alter this meaning.
Lastly, the Eck court pointed out that, under the common law, municipalities were afforded immunity for discretionary acts, but not for ministerial tasks. Eck, 237 Ill.App.3d at 761, 178 Ill.Dec. 586, 604 N.E.2d 1109. The appellate court then reasoned that the Tort Immunity Act must have implicitly retained this common law discretionary/ministerial distinction because that distinction "continues to be recognized" in the cases. Eck, 237 Ill.App.3d at 762-63, 178 Ill.Dec. 586, 604 N.E.2d 1109. The appellate court went on to conclude that supervision of preplanned construction activities is a ministerial task for which liability must be imposed, regardless of the immunity granted in section 3-108(a). Eck, 237 Ill.App.3d at 763, 178 Ill.Dec. 586, 604 N.E.2d 1109.
We agree with the Board that this analysis by the Eck court is seriously flawed. The Eck court's importation of the common law discretionary/ministerial distinction into section 3-108(a) is not appropriate. As explained above, courts must not read conditions into the Tort Immunity Act that conflict with its plain language. Barnett, 171 Ill.2d at 389, 216 Ill.Dec. 550, 665 N.E.2d 808. Such an approach wrongly results in court-made limitations on what the legislature has prescribed in an area constitutionally designated as the legislature's own. See Ill. Const.1970, art. XIII, § 4. Application of these principles is well illustrated in Barnett v. Zion Park District, 171 Ill.2d 378, 216 Ill.Dec. 550, 665 N.E.2d 808 (1996), which also involved section 3-108 of the Tort Immunity Act. The plaintiff in Barnett argued that section 3-108 was not applicable to willful and wanton misconduct, either because section 3-108(a) somehow incorporated another section's more limited immunity or because the Act as a whole established only limited immunity. Barnett, 171 Ill.2d at 389-91, 216 *1048 Ill.Dec. 550, 665 N.E.2d 808. This court rejected Barnett's arguments, noting that "[t]he plain language of section 3-108 is unambiguous." Barnett, 171 Ill.2d at 391, 216 Ill.Dec. 550, 665 N.E.2d 808. This observation is dispositive here as well. There is nothing in section 3-108(a)'s language which even remotely suggests that it does not apply to ministerial tasks. Again, we will not read such a limitation into it.
Furthermore, the Eck court was simply wrong when it concluded that the Tort Immunity Act must have implicitly retained the common law discretionary/ministerial distinction because that distinction "continues to be recognized" in the cases. Eck, 237 Ill.App.3d at 762-63, 178 Ill.Dec. 586, 604 N.E.2d 1109. In reality, the Tort Immunity Act explicitly preserves discretionary immunity as it existed under the common law in two particular provisions, sections 2-109 and 2-201 (745 ILCS 10/2-109, 2-201 (West 1996)). Snyder v. Curran Township, 167 Ill.2d 466, 468, 473, 212 Ill.Dec. 643, 657 N.E.2d 988 (1995). These sections provide immunity to local governmental units and their employees for the performance of discretionary functions. 745 ILCS 10/2-109, 2-201 (West 1996); Snyder, 167 Ill.2d at 468, 478, 212 Ill.Dec. 643, 657 N.E.2d 988. This explicit retention of discretionary immunity in two sections of the Act is what explains its continued recognition in the case law.
The legislature, in the Tort Immunity Act, adopted the general principle that local governmental units are liable in tort, "but limited this with an extensive list of immunities based on specific government functions." Burdinie v. Village of Glendale Heights, 139 Ill.2d 501, 506, 152 Ill.Dec. 121, 565 N.E.2d 654 (1990), overruled in part on other grounds, McCuen v. Peoria Park District, 163 Ill.2d 125, 129-30, 205 Ill.Dec. 487, 643 N.E.2d 778 (1994). One such immunity is for the performance of discretionary functions, granted in sections 2-109 and 2-201. A second immunity is for the failure to supervise activities on public property, granted in section 3-108(a). These immunities operate independently of one another. The proper way to give meaning to both of these statutory immunities is to recognize that the discretionary immunity provided for in sections 2-109 and 2-201 does not in any way operate to remove or otherwise limit the immunity granted in section 3-108(a) for the failure to supervise. More particularly, there is no language in section 2-109 or 2-201 that imposes liability for ministerial tasks, so those provisions cannot be used to override section 3-108(a)'s grant of immunity for the failure to supervise.
We hereby overrule Eck and its progeny (Serrano, 257 Ill.App.3d 888, 196 Ill.Dec. 86, 629 N.E.2d 631) to the extent that those decisions are not consistent with the views expressed above. We disagree with that portion of the appellate court's holding which, in reliance on those decisions, states that section 3-108(a) never provides immunity to local governmental entities for claims asserted under the Structural Work Act.

II
We have thus held that section 3-108(a) provides local public entities with immunity from liability for any injury caused by a failure to supervise an activity on public property, which includes immunity for the failure to supervise construction activities that form the basis of a Structural Work Act claim. See Eiben v. E.J. Cattani & Sons, Inc., 217 Ill.App.3d 609, 612, 160 Ill.Dec. 557, 577 N.E.2d 882 (1991). This does not mean that section 3-108(a) immunizes local public entities from all Structural Work Act claims. There may well be situations where the "having charge of" element for Structural Work Act liability (Ill.Rev.Stat.1987, ch. 48, par. 69) is met, but the "failure to supervise" element for section 3-108(a) immunity is not met.
The plaintiff maintains that the supervisory element for section 3-108(a) immunity is not met in this case because the Board's involvement in the construction "went far beyond supervision." Resolution of this argument requires us to determine whether the circuit court properly granted the Board's section 2-619 motion to dismiss.
Section 2-619(a)(9) of the Code of Civil Procedure permits involuntary dismissal where "the claim asserted * * * is barred by other affirmative matter avoiding the legal *1049 effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 1992). Immunity from suit is an "affirmative matter" properly raised under section 2-619(a)(9). See Bubb v. Springfield School District 186, 167 Ill.2d 372, 378, 212 Ill.Dec. 542, 657 N.E.2d 887 (1995); Cardwell v. Rockford Memorial Hospital, 136 Ill.2d 271, 144 Ill.Dec. 109, 555 N.E.2d 6 (1990).
The "affirmative matter" asserted by the defendant must be apparent on the face of the complaint or supported by affidavits or certain other evidentiary materials. Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 116, 189 Ill.Dec. 31, 619 N.E.2d 732 (1993). Once a defendant satisfies this initial burden of going forward on the section 2-619(a)(9) motion to dismiss, the burden then shifts to the plaintiff, who must establish that the affirmative defense asserted either is "unfounded or requires the resolution of an essential element of material fact before it is proven." Kedzie & 103rd Currency Exchange, Inc., 156 Ill.2d at 116, 189 Ill.Dec. 31, 619 N.E.2d 732. The plaintiff may establish this by presenting "affidavits or other proof." 735 ILCS 5/2-619(c) (West 1992). "If, after considering the pleadings and affidavits, the trial judge finds that the plaintiff has failed to carry the shifted burden of going forward, the motion may be granted and the cause of action dismissed." Kedzie & 103rd Currency Exchange, Inc., 156 Ill.2d at 116, 189 Ill.Dec. 31, 619 N.E.2d 732.
A dismissal of this type resembles the grant of a summary judgment motion. For that reason, the reviewing court conducts de novo review and considers whether "the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." Kedzie & 103rd Currency Exchange, Inc., 156 Ill.2d at 116-17, 189 Ill.Dec. 31, 619 N.E.2d 732.
In the present case, the Board moved to dismiss the plaintiff's complaint under section 2-619(a)(9). The Board argued that it was immune from liability under section 3-108(a) of the Tort Immunity Act, claiming that the allegations in the plaintiff's complaint amounted to charges that the Board had failed to supervise the construction work on its premises. The Board attached a project manual to its motion in support. Consequently, the Board satisfied its initial burden of going forward on the motion. The burden thus shifted to the plaintiff. The plaintiff contended that section 3-108(a) never applies to Structural Work Act claims. The plaintiff also contended that section 3-108(a) is not applicable to this case because the Board's actions amounted to more than a failure to supervise. The plaintiff attached certain discovery depositions in support of his position. After considering all the materials before it, the circuit court rejected the plaintiff's position and granted the Board's motion to dismiss.
The appellate court reversed the circuit court's dismissal of the plaintiff's complaint and remanded for further proceedings on two alternative grounds. The appellate court first held that, as a matter of law, section 3-108(a) never provides immunity to local governmental entities for claims asserted under the Structural Work Act. We reverse this holding in part I of our analysis. In the alternative, the appellate court held that the plaintiff's pleadings and evidence raised a question of material fact as to whether the Board's conduct amounted to more than mere supervision of the construction work at the school. The appellate court therefore ruled that the existence of this genuine issue of material fact should have precluded the circuit court's dismissal.
The Board does not challenge the appellate court's alternative holding anywhere in its petition for leave to appeal, appellant's brief or reply brief. Moreover, during oral argument, the Board's counsel stated that she would not be addressing the issue of whether there was more than supervision here by the Board. Counsel asserted that "this is a question of fact to be determined on its merits." Through these actions, the Board has waived any challenge that it may have presented to the appellate court's alternative holding. See 155 Ill.2d R. 341(e)(7) (points not argued in appellant's brief are waived and shall not be raised in the reply brief, during oral argument or in the petition for rehearing); City of Naperville v. Watson, *1050 175 Ill.2d 399, 406, 222 Ill.Dec. 421, 677 N.E.2d 955 (1997) (points not raised in petition for leave to appeal may be deemed waived); Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority, 172 Ill.2d 243, 269, 216 Ill.Dec. 689, 665 N.E.2d 1246 (1996) (inadequate argument can also result in waiver). We therefore affirm the appellate court's holding reversing the dismissal of the plaintiff's complaint because a question of material fact remains as to whether the Board's conduct amounted to more than supervision.

CONCLUSION
For the reasons stated, the judgment of the appellate court, which reversed the order of the circuit court and remanded for further proceedings, is affirmed.
Appellate court judgment affirmed.