2023 IL App (1st) 221260-U

No. 1-22-1260

Order filed August 30, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF MARIA BARABASZ, an alleged disabled person, | ) ) | |
| | ) | Appeal from the |
| (JOE BARABASZ and OLGA SKORA, | ) | Circuit Court of |
| | ) | Cook County. |
| Petitioners-Appellants, | ) | |
| | ) | No. 21 P 7765 |
| v. | ) | |
| | ) | Honorable |
| MARIA BARABASZ and NATALIE BLACHUT, | ) | Aicha Marie MacCarthy, |
| | ) | Judge, presiding. |
| Respondents-Appellees.) | ) | |

JUSTICE R. VAN TINE delivered the judgment of the court.
Presiding Justice McBride and Justice D. B. Walker concurred in the judgment.

**ORDER**

¶ 1   *Held*:  We reverse the trial court's judgment granting respondent's motion to dismiss the petition for guardianship and remand for further proceedings because (1) the lack of a physician's report finding that the subject of the petition was disabled did not warrant dismissal pursuant to section 2-615; (2) the record is insufficient to conduct the burden-shifting and rebuttal analysis that section 2-619(a)(9) requires; and (3) the court violated petitioners' right to procedural due process by dismissing the petition at a status hearing 16 days before petitioners' response to the motion was due.

¶ 2    Two of Maria Barabasz's adult children, Joe Barabasz and Olga Skora, filed a petition seeking appointment as their mother's guardians due to her allegedly diminished capacity. The trial court granted a motion to dismiss that Maria and her daughter, Natalie Blachut, filed pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2020)). On appeal, petitioners challenge the dismissal on the merits. Petitioners also contend that, by granting the motion to dismiss at a status hearing 16 days before their response was due, the trial court violated their right to procedural due process and Cook County Circuit Rule 2.1(d) (Cook Co. Cir. Ct. R. 2.1(d) (Aug. 21, 2000)). For the following reasons, we reverse and remand.

¶ 3                    I. BACKGROUND

¶ 4    Maria Barabasz is a 94-year-old woman who lives in Niles, Illinois. Maria has five living adult children: Joe Barabasz, Olga Skora, Eugene Barabasz, Natalie Blachut, and Halina Decker. After her husband's death in 2013, Maria granted Natalie power of attorney for property and health care decisions.[1]

¶ 5                 A. Petition for Guardianship

¶ 6    On October 29, 2021, Joe and Olga filed a petition seeking appointment as Maria's guardians, alleging that she was disabled due to her diminished capacity and was unable to manage her financial affairs. Petitioners also requested an independent medical evaluation (IME) of Maria pursuant to section 11a-9 of the Illinois Probate Act of 1975 (755 ILCS 5/11a-9 (West 2020)). Petitioners alleged that Maria suffers from dementia and that, in July 2021, they discovered that her living conditions and nutrition were inadequate. Petitioners also alleged that, beginning in

---

[1] The parties appear to agree that only Natalie has power of attorney for Maria. Maria's 2007 will, which is included in the record on appeal, named Joe, Natalie, and Olga as her personal representatives, in that order.

August 2021, Natalie took "steps to isolate Maria *** from the rest of the family" and refused to address her inadequate living conditions and nutrition.

¶ 7     The trial court appointed Alice Borzym guardian *ad litem* (GAL). The GAL met with Maria on December 29, 2021. At a hearing on January 3, 2022, the GAL informed the court that Maria "does not suffer from dementia," but "there might be a need for some form of guardianship." The court allowed the GAL additional time to meet with Maria again and file a written report.

¶ 8                                    B. First Motion to Dismiss

¶ 9     On January 4, 2022, respondents filed a section 2-619 motion to dismiss the petition for guardianship.[2] Respondents argued that (1) Maria did not need a guardian because Natalie had power of attorney to make decisions for her, if necessary; (2) the GAL reported that Maria did not suffer from dementia; and (3) Maria's physician, Dr. Andrey Lev, opined that she was fully functional, had excellent living conditions, and did not need a guardian.[3]

¶ 10    The GAL filed her initial report on January 31, 2022. The GAL indicated that conflicts between Maria's children were causing her stress, particularly Natalie's claims that Joe was going to remove Maria from her home. The GAL alleged that Maria appeared unkempt and that her home was dirty. In addition, the GAL was concerned by a letter from Dr. Lev stating that Maria had suffered a "worsening" of some unspecified medical condition. The GAL recommended that a guardian be appointed for Maria and her estate, and that a live-in caregiver assist her with daily activities.

---

[2] Strictly speaking, the first motion to dismiss is not at issue in this appeal. However, the procedural history of that motion and the facts that its briefing revealed are necessary to understand the second motion to dismiss, which is at issue.

[3] The parties and the record variously refer to Maria's physician as Dr. Lev and Dr. Lev-Weissberg. His own affidavit uses Dr. Lev, so that is how we will refer to him.

¶ 11    On February 28, 2022, petitioners filed their response to the first motion to dismiss. They argued that Natalie's power of attorney did not eliminate the need for a guardian because, according to the GAL, Natalie could not keep Maria or her home adequately clean. Petitioners also argued that Dr. Lev's opinion was insufficient to establish that Maria did not need a guardian, and that his letter that her condition was "worsening" demonstrated the need for an IME.

¶ 12    On March 14 and 31, 2022, respondents filed two versions of a reply in support of their first motion to dismiss. Attached to the March 14 reply is Dr. Lev's report, which stated that he examined Maria on September 15, 2021. Dr. Lev, an internal medicine specialist, reported that Maria was a 92-year-old "fully functional woman" who was "very happy with her living conditions and her access to family." Natalie helped her with cooking, cleaning, and transportation, and Maria's living conditions were excellent. Dr. Lev concluded that Maria did not require a guardian. The record also contains a letter from Dr. Lev dated December 20, 2021, which stated that Maria was being "treated for a worsening of her medical condition," but did not specify what that condition was or how it was worsening. Attached to respondents' March 31 reply is the report of Dr. Ann Walczynski. Dr. Walczynski, a board certified psychiatrist, concluded that Maria was "totally capable of making personal and financial decisions" and did not need a guardian.

¶ 13    On May 10, 2022, the trial court ordered Maria to undergo an IME performed by Dr. Geoffrey Shaw, a board certified geriatric psychiatrist. Dr. Shaw conducted the IME on May 20, 2022. Dr. Shaw's report stated that he "could find no indication that [Maria] has any condition/conditions that impair her executive functioning or impair her capacity to make her own decisions." He concluded that "she retains testamentary capacity. She retains capacity to execute Powers of Attorney and is capable of attending to her personal, medical and financial affairs. She

also [ ]is content in her home and appears well cared-for." Dr. Shaw further opined that Maria was "totally capable of making all her personal and financial decisions, including testamentary capacity and capacity to nominate/revoke Agents for Powers of Attorney."

¶ 14    On June 6, 2022, the GAL filed a supplemental report. The GAL stated that "[a]ll medical statements and reports are defective and incomplete as they" did not diagnose Maria and did not indicate what tests the physicians performed. The GAL noted that Maria demonstrated an "inability to understand," "confusion in distinguishing right from wrong," "inability to discern truth versus lies," "lack of memory recall," and "failure to gauge when she is being scammed." The GAL alleged that Maria's hygiene was inadequate, and that Natalie isolated her from the family and was dishonest with her siblings about Maria's living conditions. The GAL recommended that respondents' motion to dismiss be denied, and that the petition for guardianship be granted.

¶ 15    Respondents then filed a motion arguing that the allegations of the GAL's supplemental report were "lies by omission," "seemingly imagined by the GAL with no meaningful" evidentiary support, "simply false" in some cases, and "the product of an alarming lack of reasonable diligence." Respondents sought an order directing the GAL to explain why she ignored facts that did not support her conclusion, to record her meetings to Maria, and not to interact with Maria without her counsel present. Attached to this motion is the affidavit of Angelika Danek, a social worker with Niles Family Services. Danek attested that she spoke to or visited with Maria 19 times between September 2021 and April 2022 and had no concerns about Maria's appearance or hygiene, her ability to make her own decisions, or Natalie's relationship with her.

¶ 16    The trial court set the first motion to dismiss for an evidentiary hearing. However, it does not appear that this evidentiary hearing occurred or that the trial court ruled on the first motion to dismiss.

¶ 17                              C. Second Motion to Dismiss

¶ 18    On June 6, 2022, the trial court granted respondents leave to file a second motion to dismiss by July 15, 2022. The court set a briefing schedule with petitioners' response due August 5, 2022, and respondents' reply due August 19, 2022. The court also set a status hearing for July 20, 2022.

¶ 19    Respondents filed their second motion to dismiss on July 13, 2022. They argued that, under section 2-615, the petition was insufficient as a matter of law because no physician would opine that Maria was disabled and, therefore, petitioners could not comply with section 11a-9(a)'s provision that the petition should be supported by a physician's report attesting to Maria's disability. Respondents also argued that, under section 2-619, the reports of Drs. Lev, Walczynski, and Shaw were affirmative matters that defeated the petition because they established that Maria was not disabled. Respondents attached two exhibits to the second motion to dismiss: the order setting out the briefing schedule on that motion, and Maria's affidavit, which stated that she would not "submit to another examination for mental capacity for the purpose of generating yet another Report of Physician."

¶ 20    On July 15, 2022, respondents sent the trial judge a letter and an email, both of which enclosed a copy of the second motion to dismiss. They also enclosed affidavits from Drs. Lev and Walczynski, along with the curricula vitae of all three physicians. On July 19, 2022, respondents emailed Dr. Shaw's affidavit to the trial judge. The affidavits attested that each physician had

personal knowledge of the matters at issue and was licensed to practice medicine in Illinois and incorporated each physician's report and curriculum vitae.

¶ 21 At the status hearing on July 20, 2022, the trial court asked petitioners how they planned to proceed without a section 11a-9(a) physician's report opining that Maria was disabled and needed a guardian. Petitioners indicated that their response to the motion to dismiss would highlight "discrepancies" in the reports of Drs. Lev, Walczynski, and Shaw, and would cite "case law with respect to how these independent medical evaluations are supposed to be conducted." Petitioners also stated that the basis for their petition was their being "alienated from visiting their mother." The court responded that it would not order Maria to undergo another IME and would not allow petitioners to "keep trying until [they] find a physician who says she needs a guardian." The court reasoned that, nine months into the case, petitioners had not submitted "a CCP-211 that the respondent needs a guardian or that she's totally incapable of making personal or financial decisions."[4] The court granted the second motion to dismiss that day, July 20, 2022.

¶ 22 Petitioners timely appealed.

¶ 23                                          II. ANALYSIS

¶ 24 On appeal, petitioners challenge the trial court's decision to grant the second motion to dismiss on the merits and as procedurally improper.

¶ 25 The Illinois Probate Act provides that, upon the filing of a petition for guardianship, a trial court can adjudge a person disabled and appoint a guardian for that person, their estate, or both. 755 ILCS 5/11a-3(a) (West 2020). A disabled person is "a person 18 years or older who ***

_____

[4] "CCP-211" refers to Cook County circuit court form CCP0211A, which is a physician's report in a case involving an allegedly disabled adult.

because of mental deterioration or physical incapacity is not fully able to manage [her] person or estate." 755 ILCS 5/11a-2(a) (West 2020). Section 11a-9 of the Probate Act provides as follows:

"(a) The petition for adjudication of disability and for appointment of a guardian should be accompanied by a report which contains (1) a description of the nature and type of the respondent's disability and an assessment of how the disability impacts on the ability of the respondent to make decisions or to function independently; (2) an analysis and results of evaluations of the respondent's mental and physical condition and, where appropriate, educational condition, adaptive behavior and social skills, which have been performed within 3 months of the date of the filing of the petition, or, in the case of an intellectual disability, a psychological evaluation of the respondent that has been performed by a clinical psychologist licensed under the Clinical Psychologist Licensing Act, within one year of the date of the filing of the petition; (3) an opinion as to whether guardianship is needed, the type and scope of the guardianship needed, and the reasons therefor; (4) a recommendation as to the most suitable living arrangement and, where appropriate, treatment or habilitation plan for the respondent and the reasons therefor; (5) the name, business address, business telephone number, and signatures of all persons who performed the evaluations upon which the report is based, one of whom shall be a licensed physician, or may, in the case of an intellectual disability, be a clinical psychologist licensed under the Clinical Psychologist Licensing Act, and a statement of the certification, license, or other credentials that qualify the evaluators who prepared the report.

(b) If for any reason no report accompanies the petition, the court shall order appropriate evaluations to be performed by a qualified person or persons and a report

prepared and filed with the court at least 10 days prior to the hearing." 755 ILCS 5/11a-9(a), (b) (West 2020).

¶ 26     Respondents moved to dismiss the petition for guardianship pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure. The trial court did not indicate which section it relied upon in dismissing the petition, so we address each section in turn.

¶ 27                                      A. Section 2-615

¶ 28     A section 2-615 motion to dismiss attacks the legal sufficiency of an initial pleading based on defects apparent on its face. *Doe v. Coe*, 2019 IL 123521, ¶ 31. The court must accept as true all well pled facts and reasonable inferences from those facts and construe the allegations of the pleading in the light most favorable to the petitioner. *Id.* ¶ 20. A claim should be dismissed pursuant to section 2-615 only if it is clear that no set of facts can be proved that would entitle the petitioner to recovery. *Id.* ¶ 31. We review the dismissal of a claim pursuant to section 2-615 *de novo* (*id.* ¶ 20), meaning that we perform the same analysis as the trial court (*Kapotas v. Better Government Ass'n*, 2015 IL App (1st) 140534, ¶ 26).

¶ 29     The trial court found that petitioners did not submit a physician's report attesting to Maria's disability and need for a guardian, *i.e.*, that petitioners did not comply with section 11a-9(a) of the Probate Act. This conclusion is essentially a section 2-615 finding that the petition was defective on its face because it did not include an essential element; namely, a supporting physician's report. We disagree. Section 11a-9(a) states that a petition for guardianship "*should*" be accompanied by a physician's report, not that it *shall* or *must* be accompanied by such a report. See *Sloan Biotechnology Laboratories, LLC v. Advanced Biomedical Inc.*, 2018 IL App (3d) 170020, ¶ 26 ("should" is permissive language, whereas "shall" is mandatory language). Section 11a-9(a) does

not absolutely require such a report as an essential element of a petition for guardianship. To that end, section 11a-9(b) anticipates that there will be some instances in which petitioners do not submit a physician's report. In that case, the correct procedure is not dismissal pursuant to section 2-615; rather, it is for the court to order a medical evaluation of the subject of the petition. 755 ILCS 5/11a-9(b) (West 2020). We have found no authority supporting a section 2-615 dismissal of a petition for guardianship based solely on the lack of a section 11a-9(a) physician's report. The limited caselaw on this issue holds only that a petitioner's failure to file a section 11a-9(a) report does not prevent the trial court from obtaining subject matter jurisdiction over the case. See, *e.g.*, *In re Estate of Steinfeld*, 158 Ill. 2d 1, 11-16 (1994); *In re Malloy's Estate*, 96 Ill. App. 3d 1020, 1027 (1981). To the extent that the trial court dismissed the petition pursuant to section 2-615 solely because petitioners did not submit a section 11a-9(a) physician's report, it erred in doing so.

¶ 30    Respondents argue that *In re Estate of Hanley*, 2013 IL App (3d) 110264 and *In re Estate of Kusmanoff*, 2017 IL App (5th) 160129 "establish[ ] that a valid physician's report is necessary for a petition for guardianship to proceed." *Hanley* involved the dismissal of a petition for guardianship pursuant to section 2-619 where the affidavits of two physicians established that the subject of the petition could manage his own affairs and did not require a guardian. *Hanley*, 2013 IL App (3d) 110264, ¶¶ 45, 49. *Hanley* suggests that a petitioner cannot rebut affirmative matters advanced by the respondent in a section 2-619(a)(9) motion to dismiss if the petitioner lacks a section 11a-9(a) report from a physician (*id.* ¶ 57), but it does not support a section 2-615 dismissal of a petition that lacks such a report. Similarly, *Kusmanoff* did not involve a section 2-615 motion to dismiss. Rather, the Fifth District merely described the petitioner's lack of a section 11a-9(a) report as "troubling." *Kusmanoff*, 2017 IL App (5th) 160129, ¶ 78.

¶ 31    Respondents also suggest that dismissal was proper because petitioners failed to provide a section 11a-9(a) report *and* Dr. Shaw's IME concluded that Maria was not disabled. However, an IME conducted after the petition is filed cannot warrant dismissal pursuant to section 2-615 because it is not a matter apparent on the face of the petition. See *Scott Wetzel Services v. Regard*, 271 Ill. App. 3d 478, 480-81 (1995) (a section 2-615 motion cannot "be supported by reference to any facts or exhibits that are not alleged in or attached to the complaint under attack."). If anything, the physicians' reports in this case are affirmative matters that may support dismissal pursuant to section 2-619(a)(9). See *Williams v. Estate of Cole*, 393 Ill. App. 3d 771, 773-80 (2009). We address that possibility below. Accordingly, we reverse the trial court's dismissal of the petition to the extent that dismissal was pursuant to section 2-615.

¶ 32                                    B. Section 2-619(a)(9)

¶ 33    A section 2-619 motion to dismiss admits the sufficiency of the initial pleading but asserts an affirmative matter that defeats the claim. *Leetaru v. Board of Trustees of the University of Illinois*, 2015 IL 117485, ¶ 40. A court may grant a section 2-619(a)(9) motion to dismiss if the claim is barred by an " 'affirmative matter avoiding the legal effect of or defeating the claim.' " *Williams*, 393 Ill. App. 3d at 777-78 (quoting 735 ILCS 5/2-619(a)(9) (West 2002)). The affirmative matter must be evident from the face of the petition or supported by affidavits or other evidentiary materials. *Id.* at 778. The court must view the pleadings and affidavits in the light most favorable to the nonmoving party. *Id.*

¶ 34    " '[O]nce a respondent satisfies her initial burden of going forward on the section 2-619(a)(9) motion to dismiss by providing affirmative matter that would defeat the petitioner's claim, the burden then shifts to the petitioner, who must establish the affirmative defense asserted

is either unfounded or requires the resolution of an essential element of material fact before it is proven.' " (Internal quotation marks omitted.) *Id.* (quoting *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997)). To meet this burden, the petitioner may submit affidavits and other evidence. *Id.* " 'If, after considering the pleadings and affidavits, the trial judge finds that the [petitioner] has failed to carry the shifted burden of going forward, the motion may be granted and the cause dismissed.' " *Id.* at 779 (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993)). The Supreme Court of Illinois has analogized a section 2-619(a)(9) motion to dismiss to a motion for summary judgment, in which the court considers whether the existence of genuine issues of material fact preclude dismissal. *Epstein*, 178 Ill. 2d at 383. We review the grant of a section 2-619 motion to dismiss *de novo*. *Id.*

¶ 35   In this case, three physicians submitted reports opining that Maria was not disabled and did not need a guardian. Dr. Lev concluded that Maria did not need a guardian, and that Natalie provided adequate assistance with cooking, cleaning, and transportation. Dr. Walczynski concluded that Maria did not need a guardian and could make her own personal and financial decisions. Dr. Shaw concluded that Maria's executive functioning was not impaired and that she could attend to her personal, medical, and financial affairs. These reports shifted the burden to petitioners to establish either that the physicians' conclusions were unfounded, or that genuine issues of material fact existed regarding whether Maria was disabled. See *Williams*, 393 Ill. App. 3d at 778. We would assess whether petitioners successfully rebutted the physicians' reports by considering any affidavits or other evidence they submitted in response to the second motion to dismiss. See *Hanley*, 2013 IL App (3d) 110264, ¶ 56. However, the trial court granted the second motion to dismiss before petitioners' response was due, so there are no rebuttal materials in the

record for us to consider. While we can affirm a section 2-619 dismissal on any basis in the record (*Zerjal v. Daech & Bauer Construction, Inc.*, 405 Ill App. 3d 907, 911 (2010)), the trial court's premature ruling means that the record is insufficient for us to perform the burden-shifting and rebuttal analysis that section 2-619(a)(9) requires.

¶ 36   In addition, the record suggests that there are factual disputes that the trial court must address before granting a section 2-619(a)(9) motion to dismiss. For example, the GAL's reports and the physicians' reports paint two starkly different pictures of Maria's health and living conditions. The physicians claim that Maria is not disabled, has full cognitive function, and is well cared for by Natalie. The GAL claims that Maria is frequently confused and distressed, that she has poor hygiene, and that Natalie does not adequately care for her. Respondents have accused the GAL of fabricating her version of events and exerting improper influence over Maria. Moreover, Dr. Lev's letter of December 20, 2021, states that he treated Maria for "a worsening of her medical condition." This letter raises unanswered questions about what condition Maria was suffering from in December 2021, whether it was physical, mental, or both, how that condition worsened, what treatment she received, and whether the condition or treatment are still ongoing. At this point, the record consists largely of contradictory conclusions and accusations. This record does not support dismissal pursuant to section 2-619(a)(9).

¶ 37   Finally, we note the disorganized and potentially improper manner in which respondents submitted the materials that allegedly supported the second motion to dismiss. Section 2-619 requires a motion to dismiss to be "supported by affidavit" if the grounds for dismissal are not apparent on the face of the challenged pleading. 735 ILCS 5/2-619 (West 2020). The only affidavit that respondents filed with the second motion to dismiss was Maria's affidavit stating that she

would not undergo another psychological exam. The second motion to dismiss was premised on the three physicians' reports concluding that Maria was not disabled and did not need a guardian, yet respondents did not attach any of those reports as exhibits to the motion. Nor did respondents attach the physicians' affidavits and curricula vitae; rather, they sent those documents directly to the trial judge via letter and email. It appears that petitioners did not even realize that the physicians' affidavits existed until respondents sought to supplement the record on appeal with the affidavits in December 2022. On remand, the trial court should consider whether the materials that respondents filed with their second motion to dismiss are sufficient to support dismissal under section 2-619(a)(9).

¶ 38                                    C. Due Process

¶ 39     Petitioners also contend that the trial court violated their right to procedural due process because it did not give them an opportunity to respond to the second motion to dismiss. We agree. Procedural due process requires notice, an opportunity to respond, and a meaningful opportunity to be heard. *Gold Realty Group Corp. v. Kismet Cafe, Inc.*, 358 Ill. App. 3d 675, 681 (2005). The trial court did not give petitioners an opportunity to respond to the motion to dismiss in writing or to submit affidavits or other evidence. Rather, the court granted the motion to dismiss 16 days before petitioners' response was due according to the court's own briefing schedule. Moreover, petitioners were not on notice that the trial court would hold argument and rule on the second motion to dismiss on July 20, 2022. As far as petitioners knew, July 20, 2022, was merely a status hearing in the middle of the briefing schedule. The court's spontaneous decision to dismiss the case that day without a response brief from petitioners did not comply with procedural due process. *Cf. Ollins v. Karl*, 2022 IL App (1st) 220150, ¶ 31 (procedural due process was satisfied where the

plaintiffs had an opportunity to brief their response to the defendant's motion to dismiss). The Supreme Court of Illinois has criticized "convert[ing] a status call to a hearing on the merits without notice to the parties" as violative of procedural due process *People v. Bounds*, 182 Ill. 2d 1, 5 (1998). The basic tenets of due process require that petitioners be provided the opportunity to respond to the second motion to dismiss before the court rules on it.

¶ 40    Respondents contend that petitioners forfeited their procedural due process challenge because they failed to object to the dismissal of their petition. "The general rule is that it is the duty of a person, whenever he regards his constitutional rights to have been invaded, to raise an objection at the earliest fair opportunity, and the failure to do so amounts to a waiver of the right." *Feldman v. Board of Trustees of Southern Illinois University*, 108 Ill. App. 3d 1127, 1134 (1982). The trial court granted the motion to dismiss unexpectedly at a status hearing and petitioners promptly appealed. The mere fact that petitioners did not object at the status hearing does not support a finding of forfeiture. We cannot see what practical difference it would have made if they did object. The record shows that the trial court had decided to dismiss the petition and was not going to consider any further argument from petitioners.

¶ 41    Accordingly, we reverse the trial court's judgment granting the second motion to dismiss. We remand the cause for the trial court to provide petitioners an opportunity to respond to respondents' second motion to dismiss. Because we reverse and remand on this basis, we need not address petitioners' arguments concerning Cook County Circuit Rule 2.1(d).

¶ 42                                III. CONCLUSION

¶ 43    For the foregoing reasons, we reverse the trial court's judgment granting respondents' second motion to dismiss, and we remand this matter for further proceedings consistent with this order.

¶ 44    Reversed and remanded.