# Illinois Official Reports

## Appellate Court

---

**Kuykendall v. Schneidewind, 2017 IL App (5th) 160013**

---

| | |
|---|---|
| Appellate Court Caption | EDWARD KUYKENDALL, Plaintiff-Appellant and Cross-Appellee, v. DAVID G. SCHNEIDEWIND, Individually and in His Capacity as Trustee of the Evelyn J. Schneidewind Revocable Trust; SCHNEIDEWIND INSURANCE AGENCY, INC., an Illinois Corporation; JOHN DOE, in His or Her Capacity as Trustee of the Evelyn J. Schneidewind Revocable Trust; EVELYN J. SCHNEIDEWIND REVOCABLE TRUST; EVELYN J. SCHNEIDEWIND, Individually and in Her Capacity as Trustee of the Evelyn J. Schneidewind Trust; ADVANTAGE REALTY; and JOHN DOES 1 THROUGH 5, Defendants-Appellees and Cross-Appellants. |
| District & No. | Fifth District<br>Docket No. 5-16-0013 |
| Filed | May 26, 2017 |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, No. 15-AR-863; the Hon. Heinz M. Rudolf, Judge, presiding. |
| Judgment | Affirmed in part, reversed in part, cause remanded. |
| Counsel on Appeal | Jana Yocom Rine, of Jana Yocom, P.C., of Evansville, Indiana, for appellant.<br><br>David B. Schneidewind, of Boyle Brasher, LLC, of Belleville, and Elizabeth A. Stuart, of Stuart & Johnston LLC, of Atlanta, Georgia, for appellees. |

Panel                              JUSTICE CATES delivered the judgment of the court, with opinion. Presiding Justice Moore and Justice Chapman concurred in the judgment and opinion.


**OPINION**

¶ 1        The plaintiff, Edward Kuykendall, filed an action in the circuit court of St. Clair County against the defendants alleging fraud, breach of contract, and violations of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2014)) arising from the purchase of a commercial property. The defendants moved to dismiss the action with prejudice under section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2014)) and requested attorney fees and costs under a fee-shifting provision in the purchase agreement. The defendants also sought sanctions under Illinois Supreme Court Rule 137 (eff. July 1, 2013). Following a hearing, the trial court granted the defendants' motions and dismissed the plaintiff's action with prejudice but denied their requests for attorney fees, costs, and sanctions. The plaintiff appealed from the order of dismissal, and the defendants cross-appealed from the order denying attorney fees and sanctions. For reasons that follow, we reverse the order of dismissal, affirm the order denying sanctions, and remand the cause for further proceedings.


¶ 2                              BACKGROUND
¶ 3        In June 2014, the plaintiff, Edward Kuykendall, a California resident, entered into an agreement to purchase a commercial building and surrounding property located on East Broadway in Mt. Vernon, Illinois, from defendant Evelyn J. Schneidewind Revocable Trust (Trust). The "Commercial Building Purchase Agreement" (Agreement) was executed by both parties as of June 18, 2014. In accordance with the Agreement, the Trust provided the plaintiff with an estoppel certificate prepared by the commercial property's sole tenant, DG Retail LLC (Dollar General). The certificate stated that as of June 27, 2014, the Trust was not in default of its obligations under the lease. The sale closed on July 16, 2014.

¶ 4        In the meantime, Dollar General sent a certified letter, dated July 15, 2014, to Evelyn J. Schneidewind, as trustee of the Trust, notifying the Trust that some parking bumpers in the parking lot were in poor condition and required repair. The certified letter was received by the Trust on July 17, 2014, one day after the closing. Over the next two weeks, Dollar General sent three more certified letters to the Trust, two dated July 17, 2014, and a third dated July 31, 2014, notifying the Trust that the drainage ditch, exterior lighting, portions of the building's roof, parking lot, and loading zone required maintenance or repairs. In each letter, Dollar General noted that a failure to address the issues within 30 days would constitute a breach of the lease.

¶ 5        On August 28, 2014, Dollar General sent the first of four certified letters to the plaintiff, notifying him of several maintenance issues, including potholes throughout the parking lot, problems with exterior lighting in the receiving area, broken parking bumpers, drainage ditch issues, and restriping of the parking lot. In a second letter, dated September 3, 2014, Dollar General notified the plaintiff that the exterior guttering was in disrepair. The third letter,

dated September 9, 2014, advised that the roof was leaking again. The fourth letter, dated November 5, 2014, indicated that there was a problem with the parking lot repairs.

¶ 6 The plaintiff and the Trust corresponded, but they could not agree on which party was responsible for the maintenance issues. The plaintiff paid for repairs totaling $8973 and then demanded that the Trust reimburse him. The plaintiff claimed that the Trust had knowledge of the condition of the premises prior to the closing and intentionally concealed the information from the plaintiff. The Trust refused to reimburse plaintiff. The Trust asserted that it had no knowledge of the condition of the premises prior to the closing and that, under the terms of the Agreement, the property was sold in an "as is" condition and the plaintiff bore the responsibility to inspect the premises prior to the sale.

¶ 7 On June 11, 2015, the plaintiff initiated this action seeking to recoup the amount he spent on the repairs. The second amended complaint, at issue here, alleges fraud (count I), breach of contract (count II), and violations of the Consumer Fraud Act (count III). The crux of the plaintiff's complaint is that the defendants had actual or constructive knowledge of the need for repairs to the commercial building and surrounding property prior to the closing date and that they intentionally concealed this information from the plaintiff, despite a duty to disclose it.

¶ 8 Counts I and III of the second amended complaint are directed against Evelyn J. Schneidewind, individually and as trustee of the Trust; John Doe, as trustee of the Trust; David G. Schneidewind; Schneidewind Insurance Agency; Advantage Realty; and John Does 1 through 5. In counts I and III, the plaintiff alleges that the defendants had a duty to disclose defects in the property and any breach of the lease, that the defendants intentionally concealed material facts regarding the conditions of the premises and breaches of the lease, and that the plaintiff was fraudulently induced to purchase the property. The plaintiff asserts that the defendants had a heightened duty to disclose the condition of and defects in the property because Evelyn J. Schneidewind and David G. Schneidewind held real estate licenses, which were sponsored by Schneidewind Insurance Agency and Advantage Realty. The plaintiff further asserts that the Trust is liable as the seller and the remaining defendants are liable as trust beneficiaries and/or as licensed realtors. In counts I and III, the plaintiff seeks compensatory damages in the sum of $8973 and punitive damages. He seeks as an additional award of attorney fees in count III.

¶ 9 Count II of the second amended complaint is directed only against defendant Evelyn J. Schneidewind, in her capacity as trustee of the Trust. In count II, the plaintiff alleges that Dollar General issued an estoppel certificate that provided that the Trust was in compliance with the terms of the lease; that the estoppel certificate was inaccurate, as evidenced by Dollar General's letters dated July 15, 2014, and July 17, 2014; that under the terms of the Agreement, the Trust promised to warrant the accuracy of Dollar General's estoppel certificate; and that the Trust breached the Agreement in that it refused to pay for repairs when it became evident that the estoppel certificate was inaccurate. The plaintiff seeks an award of $8973, due to the Trust's breach of its promise to warrant the accuracy of the estoppel certificate, and attorney fees and costs under the fee-shifting provision in the Agreement.

¶ 10 Several documents were attached and incorporated as part of the second amended complaint, including the Agreement, the estoppel certificate, the repair receipts, and Dollar General's certified letters regarding needed repairs. At the outset, we note that the copy of

the Agreement that has been appended as an exhibit and referenced by all parties is incomplete. Two pages are missing, apparently inadvertently omitted, from the initial copy of the Agreement, which was filed as part of a defendant's motion to dismiss the original complaint. Neither the plaintiff nor the defendants recognized the omission. Apparently, the parties made copies of the incomplete document and proceeded to attach and incorporate those copies into their respective pleadings.

¶ 11     According to the opening page of the Agreement, Edward Kuykendall and Barbara Kuykendall are the buyers of the property and Evelyn J. Schneidewind, as trustee for the Trust, is the seller of the property. HL Commercial Real Estate is named as the selling broker, and Tri-Oak Consulting Group is named as the listing broker.

¶ 12     Section 10 of the Agreement sets out the seller's warranties and states in part:

> "Seller represents, warrants, covenants, and agrees that as of the date of this agreement, the following are, and as of closing, will be true and correct, and further agrees that such representations, warranties and covenants shall survive the close of escrow:
>
> ***
>
> b. Until the close of escrow, Seller shall, to the extent required under any lease or rental agreement affecting the Property, maintain the Property in good condition, reasonable wear and tear excepted.
>
> c. Seller has no knowledge of any order or notice, written or otherwise, by any City, County, State or Federal agency or department, that any work or repair, maintenance or improvement be performed on the Property, or that the Property is in violation of any statute, law or ordinance ***. To the best of Seller's knowledge, there is no condition that affords the basis for any such violations described in this paragraph.
>
> ***
>
> e. Each lease or rental agreement affecting the Property is in full force and effect in accordance with its terms, and except as disclosed pursuant to this agreement, is unmodified free from default, and to the best of Seller's knowledge, no event has occurred which with notice or lapse of time, or both, would constitute a default thereunder. Except as have been disclosed pursuant to other sections of the agreement, no tenant is entitled to any rental concessions or abatements for any period of time subsequent to the scheduled closing date of this agreement; no action or proceeding has been instituted or is pending against Seller by any tenant of the Property; and, there are no leasing commissions or other compensation now due and payable, or payable in the future pursuant to any rental agreement which affects the Property at the close of escrow.
>
> * * *
>
> i. To the best of Seller's knowledge, all documents delivered to Buyer by Seller or on Seller's behalf are complete and accurate."

¶ 13     Section 16 of the Agreement addresses the buyer's responsibilities and states in part:

> "a. It shall be the Buyer's sole responsibility to investigate, to its satisfaction, the Property and any substantive fact or facts that it is relying on in completing the transaction contemplated by this agreement. In the event that prior to the close of

- 4 -

escrow Buyer discovers a discrepancy in the disclosed fact or facts, or any deficiency in the property, Buyer's sole remedy against Seller or HLC shall be termination of this agreement.

b. The Property being sold is not new and neither Seller nor Seller's agent warrant the condition of the property, which is sold in its present 'AS IS' condition. Buyer understands and agrees that Seller, his or her agents or assigns, will not, prior or subsequent to close of escrow, be responsible for the repair, replacement, or modification of any deficiencies, malfunctions or mechanical defects in the material, workmanship, or mechanical components of the structures, improvements, or land, including but not limited to: heating, plumbing, electrical or sewage disposal system, well or other water supply system, drainage or moisture conditions, foundations, air conditioning, hot water heater, pools, spas, solar systems, appliances, roof, or damage by or presence of pests, mold, or other organisms. This provision supersedes all other provisions in the Purchase Agreement regarding the condition of the Property (except those relating to destruction of improvements, risk of loss, compliance with local laws applicable to the sale or transfer of property, and leaving property free of debris and personal property). However, Seller agrees the Property (including all structures, pool, spa, grounds and landscaping) will be maintained and delivered to Buyer at close of escrow in the same or better condition than as of the date of acceptance or, if there is an inspection contingency, as of the time the inspection contingency is removed."

¶ 14     Section 16 also addresses inspections. Subsection (c) states that the buyer has been advised to carefully inspect the property personally and to obtain inspection reports from qualified experts regarding all systems and features of the property. Subsection (d) states that the seller agrees to permit buyers and their representatives access to the property to complete inspections. Subsection (e) provides that the buyer will notify the seller in writing, within the stated inspection period, whether the condition of the property is acceptable.

¶ 15     Subsections (f) and (g) of section 16 address matters related to disclosure and reliance:

"f. Buyer is not relying upon Seller or Seller's agent to investigate and report on the condition of the Property other than conditions known by the Seller or Seller's agent and noted on any disclosure statements that have been provided. In all other respects, Buyer agrees that he or she is relying exclusively upon Buyer's own inspection and that of experts retained by Buyer as to the condition of the physical features of the Property and location of the boundary lines.

g. The parties understand that, even though this is an 'AS IS' sale, the Seller is obligated by law to reveal all known defects of a material nature of which the Seller is aware. The parties do not intend by this Addendum to waive any provision of the law requiring that the Seller or the agents furnish disclosure statements, nor do the parties intend to waive any provisions of local laws requiring inspections or reports."

¶ 16     Section 17 of the Agreement states that the buyer, at his expense, shall have the right to have the property inspected and then notify the seller of his acceptance or rejection of the property or on what additional conditions the buyer would accept the property.

¶ 17     Section 18 of the Agreement addresses the tenant estoppel certificates and states: "Prior to the close of escrow, Seller shall deliver estoppel certificates signed by each tenant who has a lease agreement affecting the Property." The estoppel certificate is required to include

substantive facts regarding the lease or rental agreement. This section further provides that the seller agrees to immediately notify the buyer of any breach of a lease that occurs after delivery of an estoppel certificate and before the close of escrow. The seller warrants that all provisions within the estoppel certificate shall be accurate and that the warranties shall survive the close of escrow.

¶ 18 The plaintiff attached Dollar General's estoppel certificate to the second amended complaint. Therein, Dollar General stated that as of June 27, 2014, the landlord was not in default under the lease. The plaintiff also attached the certified letters regarding needed repairs which Dollar General addressed initially to the Trust and subsequently to the plaintiff. In these certified letters, Dollar General notified the landlord that the parking lot, the delivery area, the roof and gutters, and the drainage ditch were in disrepair.

¶ 19 The receipts for these repairs and correspondence between the parties were also attached to and incorporated in the second amended complaint. The repair bills totaled $8973. Finally, the plaintiff attached correspondence regarding the repair bills. In a letter dated November 26, 2014, and addressed to David G. Schneidewind of Schneidewind Insurance Agency and Gregory Fitzgerald of the Tri-Oak Consulting Group, plaintiff's counsel states that the plaintiff is seeking reimbursement of $8973 for repairs to the building and parking lot. Counsel stated that the sellers and the listing agent had an obligation of full disclosure where the buyer could not personally inspect the property, and he requested immediate reimbursement of the sums expended to repair the property. Subsequently, in a letter dated January 4, 2015, from the plaintiff to David G. Schneidewind and Tri-Oak Consulting Group, the plaintiff noted that neither Schneidewind nor Tri-Oak had responded to the letter from plaintiff's counsel. The plaintiff further noted that David G. Schneidewind and Tri-Oak had attempted to make repairs of the paving and the broken parking bumpers and that these attempts demonstrated an admission of liability. The plaintiff stated that the repairs were not properly performed and that the plaintiff then paid for proper repairs. The plaintiff again demanded reimbursement of $8973.

¶ 20 The defendants filed their respective combined motions to dismiss the second complaint pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2014)). Only the motions pursuant to section 2-619 are at issue in this appeal. Defendant Evelyn J. Schneidewind, individually and in her capacity as trustee of the Trust, filed a motion to dismiss under section 2-619(a)(9). Evelyn J. Schneidewind, individually, asserted that she was neither a party to the real estate contract in question nor a real estate agent or broker in the sale of the property and that these affirmative matters defeated the claims in the plaintiff's second amended complaint. Evelyn J. Schneidewind, individually and as trustee of the Trust, asserted that the plaintiff's claims were barred by an affirmative matter in that under the terms of the Agreement, the commercial property was sold "as is" and that notices of the need for maintenance were sent by Dollar General and received by defendant Trust after the property was sold to the plaintiff. Evelyn J. Schneidewind, individually and as trustee of the Trust, also moved to dismiss count III under section 2-619(a)(9) on the grounds that the defendants were not engaged in conduct involving trade or commerce as required under the Consumer Fraud Act.

¶ 21 In support of the motion, defendant Evelyn J. Schneidewind relied on the Agreement and Dollar General's estoppel certificate. She also submitted her own affidavit, the affidavit of Gregory Fitzgerald, a trustees' deed, and other documents in support of her motion to

dismiss. In her affidavit, Evelyn J. Schneidewind averred that she was not the legal owner, seller, or real estate agent or broker of the subject property and that she had never spoken with the plaintiff. The affidavit of Gregory Fitzgerald states that he was the president of Tri-Oak Consulting Group, that he was the sole listing broker for the subject property, and that he did not split or share a commission with Evelyn J. Schneidewind or any of the other named defendants in the case. The trustees' deed indicates that the Trust conveyed the subject property to the plaintiff on July 16, 2014. The deed was filed in the office of the recorder of deeds on July 21, 2014.

¶ 22 Defendant Evelyn J. Schneidewind also attached the certified letter, dated July 15, 2014, from Dollar General and a copy of a United States Postal Service tracking document indicating that the certified letter was delivered to the Trust on July 17, 2014. Evelyn J. Schneidewind noted that Dollar General had purportedly sent the certified letter by e-mail. She averred that she did not receive an e-mail from Dollar General on July 15, 2014, because the e-mail address used by Dollar General had not been active since July 2010. She attached a notice from her former Internet service provider, Verizon, which stated that her e-mail account would be serviced by another provider, effective July 1, 2010.

¶ 23 Defendant Schneidewind Insurance Agency moved to dismiss the claims against it under section 2-619(a)(9). Schneidewind Insurance Agency asserted that it was not a party to the real estate contract in question, that it did not act as a real estate agent or broker regarding the sale of the subject property, and that it was not a beneficiary of the Trust. Schneidewind Insurance Agency argued that the plaintiff's claims were barred by the aforementioned affirmative matters. Schneidewind Insurance Agency attached copies of the trustees' deed, the affidavit by Gregory Fitzgerald, and two affidavits by David G. Schneidewind in support of its motion to dismiss. In an affidavit regarding Schneidewind Insurance Agency, David G. Schneidewind stated that he was the president of Schneidewind Insurance Agency; that Schneidewind Insurance Agency was engaged in the sale of auto, home, and life insurance policies; that it has never engaged in the business of real estate sales or brokerage; and that it has never held out David G. Schneidewind as a realtor. David G. Schneidewind further averred that Scheidewind Insurance Agency was neither the owner nor the seller of the subject property. In his personal affidavit, David G. Schneidewind averred that he was neither the owner nor the seller of the subject property, that he was not the trustee of the Trust, and that he had never been a real estate agent or broker. He further averred that he had never spoken to the plaintiff.

¶ 24 Defendant David G. Schneidewind also moved to dismiss the claims against him under section 2-619(a)(9). David G. Schneidewind asserted that he was not a party to the real estate contract in question and that he did not act as a real estate agent or broker regarding the sale of the subject property. He attached the trustees' deed, the affidavit by Gregory Fitzgerald, and his personal affidavit in support of his motion.

¶ 25 Finally, Advantage Realty moved to dismiss the claims against it under section 2-619(a)(9). Advantage Realty asserted that it was not the broker, realtor, or agent for any party to the sale of the property in question; that it was not a coagent or cobroker; and that it was not a beneficiary under the Trust. Defendant Advantage Realty attached an affidavit by its president and owner, David G. Schneidewind. David G. Schneidewind averred that his company did not act as a real estate agent or broker for the subject property and that it did not share in any of the fees or commissions regarding the sale of that property.

¶ 26    The defendants' motions to dismiss were argued before the trial court on December 10, 2015. Following the arguments, the trial court issued an order in which it granted the defendants' motions to dismiss pursuant to section 2-619(a)(9) but denied both the request for attorney fees under a "fee-shifting" provision in the Agreement and the motions for sanctions under Illinois Supreme Court Rule 137 (eff. July 1, 2013). The plaintiff appealed the order of dismissal, and the defendants filed a cross-appeal, challenging the order denying their requests for attorney fees and sanctions.

¶ 27                                    DISCUSSION

¶ 28    Before considering the issues raised in the plaintiff's appeal, we first address the plaintiff's motion to supplement the record on appeal and alternative motion for sanctions, which were taken with the case. Prior to oral arguments, the plaintiff filed a motion to supplement the record on appeal with a page of the Agreement that had been left out when a copy of the Agreement was filed. The plaintiff claims that the omitted page contains a provision which conflicts with the "as is" provision in the Agreement and that the Agreement cannot be properly construed in the absence of this provision. The plaintiff further claims that the defendants initially filed an incomplete copy of the Agreement and that the defendants acted in bad faith in persisting to argue that the "as is" provision excused the seller from any responsibility for the repairs once they became aware that the omitted page contained a provision contrary to the "as is" provision. The plaintiff seeks leave to supplement the record on appeal to include the omitted page pursuant to Illinois Supreme Court Rule 329 (eff. Jan. 1, 2006) or alternatively a sanction for the defendants' misconduct. The defendants filed objections in response to the plaintiff's motion to supplement and alternative motion for sanctions. The defendants argue that a party cannot supplement the record on appeal with a document which was not part of the trial court's record. The defendants also argue that the plaintiff's motion for sanctions is groundless and should be denied.

¶ 29    Illinois Supreme Court Rule 329 provides that a record may be supplemented on appeal to supply omissions, to correct errors, and to settle controversies about whether the record accurately reflects what occurred in the trial court. Ill. S. Ct. R. 329 (eff. Jan. 1, 2006). Under the rule, the record may only be supplemented with documents that were actually before the trial court. *Deason v. Gutzler*, 251 Ill. App. 3d 630, 631, 622 N.E.2d 1276, 1278 (1993). In this case, the omitted page of the Agreement was not before the trial court and therefore may not be considered on review. In addition, the plaintiff has not shown that the defendants' objection to the motion to supplement was made for an improper purpose. Accordingly, the plaintiff's motion to supplement the record on appeal and alternative motion for sanctions are denied.

¶ 30                              The Plaintiff's Appeal

¶ 31    On appeal, the plaintiff challenges the trial court's order granting the defendants' motions to dismiss his complaint with prejudice pursuant to section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2014)). The plaintiff contends that the trial court erred in dismissing his action where the defendants failed to show that the plaintiff's claims were barred by an affirmative matter that defeats his claim.

¶ 32    A motion to dismiss under section 2-619(a)(9) admits the legal sufficiency of the plaintiff's complaint but asserts that the claim against the defendant is barred by an

affirmative matter that avoids the legal effect of or defeats the claim. 735 ILCS 5/2-619(a)(9) (West 2014); *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55, 962 N.E.2d 418. An "affirmative matter" is a type of defense that negates a cause of action completely or refutes critical conclusions of law or conclusions of material fact that are unsupported by specific factual allegations contained in or inferred from the complaint. *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 121, 896 N.E.2d 232, 238 (2008); *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115, 619 N.E.2d 732, 735 (1993). The "affirmative matter" must be apparent on the face of the complaint or supported by affidavits or other evidentiary materials, and it must do more than refute a well-pleaded fact in the complaint. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383, 687 N.E.2d 1042, 1049 (1997). Section 2-619(a)(9) does not authorize the defendant to submit affidavits or evidentiary matters for the purposes of contesting the plaintiff's factual allegations and presenting its version of the facts. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 34, 988 N.E.2d 984. When a defendant seeks to address the complaint's factual allegations, a summary judgment motion is the appropriate procedural tool. *Reynolds*, 2013 IL App (4th) 120139, ¶ 34, 988 N.E.2d 984. The defendant has the initial burden of establishing that an affirmative matter defeats the plaintiff's claim, and if satisfied, the burden shifts to the plaintiff to demonstrate that the proffered affirmative matter is either unfounded or requires the resolution of a material fact. *Epstein*, 178 Ill. 2d at 383, 687 N.E.2d at 1049; *Hodge*, 156 Ill. 2d at 116, 619 N.E.2d at 735.

¶ 33 When ruling on a motion to dismiss under section 2-619(a)(9), the trial court must accept as true all well-pleaded facts in the plaintiff's complaint and all reasonable inferences that may be drawn, and it must construe the pleadings and supporting documents in a light most favorable to the nonmoving party. *Sandholm*, 2012 IL 111443, ¶ 55, 962 N.E.2d 418. The motion should be granted only if the plaintiff can prove no set of facts that would support his cause of action. *In re Estate of Boyar*, 2013 IL 113655, ¶ 27, 986 N.E.2d 1170. A motion to dismiss under section 2-619(a)(9) presents a question of law that is reviewed *de novo*. *In re Estate of Boyar*, 2013 IL 113655, ¶ 27, 986 N.E.2d 1170.

¶ 34 In this case, the defendants argued that the plaintiff's complaint should be dismissed pursuant to section 2-619(a)(9) because the "as is" provision in the Agreement constitutes an affirmative matter that bars or otherwise defeats the allegations in the plaintiff's complaint. We do not agree. Initially, we note that the defendants' argument is based on their interpretations of one provision in the Agreement. Under ordinary principles of contract law, a contract must be construed as a whole, viewing each provision in light of the others. *Gallagher v. Lenart*, 226 Ill. 2d 208, 233, 874 N.E.2d 43, 58 (2007). The intent of the parties is not to be derived from any clause or provision standing by itself. *Gallagher*, 226 Ill. 2d at 233, 874 N.E.2d at 58. Thus, we will not construe the "as is" provision of the Agreement in isolation.

¶ 35 In reviewing the Agreement, we note that it contains several provisions which delineate the seller's duties, warranties, and covenants, many of which were set forth earlier in this decision. These provisions must be read in conjunction with the "as is" provision. For example, in section 10, the seller warrants that until the closing it will maintain the property in good condition, reasonable wear and tear excepted; that each lease affecting the property is in effect and free from default; and that, to the best of the seller's knowledge, all documents that it has delivered to the buyer are complete and accurate. Section 10 further states that the

seller's warranties, covenants, and representations shall survive the close of escrow. Section 16 of the Agreement states that even though this is an "AS IS" sale, the seller is obligated by law to reveal all known defects of a material nature of which the seller is aware and that the parties do not intend to waive any provision of the law requiring that the seller or the agents furnish disclosure statements. Section 18 states that prior to the close of escrow, the seller shall deliver to the buyer an estoppel certificate, which is signed by the tenant and which includes substantive facts regarding the lease or rental agreement, that the seller agrees to immediately notify the buyer of any breach of a lease that occurs after delivery of an estoppel certificate and before the close of escrow, and that the seller warrants that all provisions within the estoppel certificate shall be accurate and that this warranty survives closing. Contrary to the defendants' contention, it was not the plaintiff's responsibility to request an updated estoppel certificate prior to the closing. Section 18 of the Agreement places the burden squarely on the shoulders of the seller to notify the buyer of any breach of the lease that occurs after delivery of an estoppel certificate and before the close of escrow. Considering the Agreement as a whole, the "as is" provision is subject to exceptions, limitations, and potential conflicts when considered with other provisions in the Agreement. Other provisions temper and modify the "as is" provision. Further, the "as is" provision is not an affirmative matter that would preclude the plaintiff from alleging that he acted in reliance upon the accuracy of the various disclosures and the Trust's covenant to warranty the estoppel certificate. *Napcor Corp. v. JP Morgan Chase Bank, NA*, 406 Ill. App. 3d 146, 938 N.E.2d 1181 (2010). Thus, we find that the "as is" provision does not constitute an affirmative matter that avoids the legal effect of or defeats any of the claims in the plaintiff's second amended complaint.

¶ 36    Next, we consider whether the materials submitted by defendants Evelyn J. Schneidewind, individually, David G. Schneidewind, Schneidewind Insurance Agency, and Advantage Realty constituted an "affirmative matter" under section 2-619(a)(9) so as to defeat plaintiff's allegations of fraud and consumer fraud. Each of the defendants submitted affidavits stating that these defendants were not owners, sellers, brokers, or realtors of the subject property. The plaintiff alleged that the defendants had higher duties to disclose based on their various roles. The plaintiff argued that his pleadings allege relationships that may constitute enterprise liability. The affidavits do not address these allegations, and we must accept as true all well-pleaded allegations and reasonable inferences. We note that discovery has not commenced on these issues. Because the record is not yet fully developed, it is difficult to determine whether one or more of the named defendants may have held a special relationship that would have included a duty to disclose defects in the property or breaches of the lease. A motion to dismiss pursuant to section 2-619(a)(9) is not a substitute for a summary judgment motion. *Reynolds*, 2013 IL App (4th) 120139, ¶ 53, 988 N.E.2d 984. In this case, the defendant's evidentiary materials did not constitute affirmative matters that defeat the plaintiff's claims.

¶ 37    After reviewing the record, we conclude that the trial court erred in granting the defendants' motions to dismiss under section 2-619(a)(9). Accordingly, the order dismissing the second amended complaint with prejudice is reversed, and the cause remanded for further proceedings.

On cross-appeal, the defendants initially argue that the trial court erred in denying the Trust's request for an award of attorney fees and costs under a "fee-shifting" provision in the real estate sales contract. Here, we have reversed the trial court's order of dismissal, and we remanded the case for further proceedings. At this stage of proceedings, there is no "prevailing party." Therefore, we have no occasion to consider arguments regarding the interpretation and application of the "fee-shifting" provision in the Agreement.

The defendants also argue that the trial court erred in denying their motions for sanctions pursuant to Illinois Supreme Court Rule 137. Under Rule 137, a trial court, in its discretion, may impose sanctions against a party for filing a pleading that is not well grounded in fact; not supported by existing law or by good-faith argument for modification, reversal, or extension of the law; or is instituted for an improper purpose such as harassment. Ill. S. Ct. R. 137(a) (eff. July 1, 2013). Rule 137 allows but does not require the imposition of sanctions. *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 15, 39 N.E.3d 992. The decision regarding the imposition of sanctions under Rule 137 is committed to the sound discretion of the trial court, and its decision will not be overturned absent an abuse of discretion. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487, 693 N.E.2d 358, 372 (1998). In this case, the trial court determined that the plaintiff's pleadings were neither frivolous nor brought for an improper purpose and denied the defendants' motions for sanctions. After reviewing the record, we do not find that the trial court abused its discretion in denying the defendants' motion for sanctions.

Finally, the defendants asked this court to enter sanctions against the plaintiff under Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994) for filing a frivolous appeal. Under Rule 375(b), an appropriate sanction may be imposed if an appeal is deemed frivolous or not taken in good faith. Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). In this case, we do not find that the plaintiff's appeal is frivolous or that it was taken for an improper purpose. The defendants' motion for sanctions under Rule 375 is denied.

## CONCLUSION

For the reasons stated, the judgment of the circuit court dismissing the plaintiff's second amended complaint with prejudice is reversed, the order denying the defendants' motion for sanctions is affirmed, and the cause is remanded for further proceedings.

Affirmed in part, reversed in part, cause remanded.